Stanley K. MANN, Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 03–5013.

United States Court of Appeals,
Federal Circuit.

DECIDED: June 27, 2003.

Steven J. Lechner, Mountain States Legal Foundation, of Lakewood, CO, argued for plaintiff-appellant. With him on the brief was William Perry Pendley.

Luke Levasseur, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director.

Before MAYER, Chief Judge,
NEWMAN, and PROST, Circuit Judges.

PROST, Circuit Judge.

Stanley K. Mann ("Mr.Mann") appeals the decision of the United States Court of Federal Claims granting the motion by the United States to dismiss or, in the alternative, for summary judgment, and denying Mr. Mann's cross motion for partial summary judgment. The court held that the United States did not breach Mr. Mann's geothermal lease or violate his Fifth Amendment due process rights. Because we conclude that the United States breached the lease by failing to provide Mr. Mann with notice prior to terminating his lease, we reverse and remand.

## BACKGROUND

The Geothermal Steam Act of 1970, 30 U.S.C. §§ 1001–1025 (amended 1988), authorizes the Secretary of the Interior to issue leases for the development and uti-

lization of geothermal steam and associated geothermal resources on federal land. 30 U.S.C. § 1002 (2000). In October 1981, the Bureau of Land Management ("BLM") issued a ten-year geothermal lease, which was eventually reassigned to Mr. Mann, president of Crowne Geothermal Ltd. ("Crowne"). The BLM approved the reassignment effective April 1, 1986, to Mr. Mann in his individual capacity.

During the period of the lease, Mr. Mann corresponded with the BLM and the Minerals Management Service ("MMS") on numerous occasions. In September 1989, Mr. Mann began teaching at Pepperdine University and rented an apartment in Malibu, California (the "Malibu address"). On March 30, 1990, Mr. Mann sent a letter to the BLM, concerning his lease bond, on Pepperdine University letterhead with his Malibu address stamped on it. He signed the letter in his individual capacity. On May 3, 1990, Mr. Mann sent a letter to an MMS representative that included the following:

> Would you also be kind enough to make sure the records of our current address get properly changed. Although we gave the correct address to the [BLM] office in New Mexico, we continue to have mail forwarded from the old address.... The current address is c/o Stanley K. Mann [Malibu address]....

Mr. Mann's Malibu address was also stamped on the letter and the letter was signed in Mr. Mann's individual capacity. Thereafter, the BLM issued a notice on September 5, 1990, that was addressed as follows:

Crowne Geothermal

Attention: Dr. Stanley K. Mann

[Malibu address]

The notice informed Mr. Mann that his lease was transferred to the jurisdiction of the MMS. The MMS sent a letter, dated October 9, 1990, to Mr. Mann at his Malibu address in response to a letter he had sent them in September.

On April 1, 1991, the BLM contacted Mr. Mann by telephone at his Malibu address regarding his lease bond. In response, Mr. Mann sent a letter, dated April 1, 1991, on Crowne's letterhead to the insurance company that had posted the bond on his lease. Mr. Mann sent the letter in his capacity as President of Crowne, which was paying for the bond. The letter requested the insurance company to send a surety change notice to the BLM and inform them that he would send a copy of the letter to a BLM representative who was apprised of the situation. The letter also notified the insurance company to "[p]lease note our new address in California at the bottom of this letter," which was a "Costa Mesa address." Mr. Mann then sent an unsigned, courtesy copy of the April 1 letter to the BLM. Mr. Mann asserts that he forwarded the April 1 letter to the BLM to demonstrate to them that he had "followed-up" on their telephone call regarding his lease bond.

In 1993, the BLM concluded that Mr. Mann was not making sufficient efforts under the lease terms toward utilization of the leased geothermal resources. On November 12, 1993, the agency rendered a "Lease Determination," which informed Mr. Mann that because his well was not in commercial production his lease would expire 30 days after receipt of the decision unless he provided "satisfactory evidence" of diligent efforts to utilize the geothermal resources.[1] The Lease Determination also advised Mr. Mann that an appeal of the

---

1. The Lease Determination's references to Mr. Mann's lease number contained typographical errors. We agree with the Court of Federal Claims, however, that the totality of the decision makes it clear that its subject is Mr. Mann's lease.

decision could be filed with the Interior Board of Land Appeals ("IBLA") within 30 days of his receipt of the decision. The BLM sent the Lease Determination via certified mail to the Costa Mesa address noted in the unsigned copy of the April 1 letter Mr. Mann had forwarded to the BLM. The postal service returned the letter to BLM marked "unclaimed" approximately three weeks later, on December 8, 1993. The BLM did not make any additional efforts to facilitate Mr. Mann's receipt of the decision.

Mr. Mann learned of the Lease Determination on August 16, 1995, during a visit to the BLM. The BLM concluded that Mr. Mann's lease terminated 60 days from the date the mailed Lease Determination was returned to them. Mr. Mann appealed the November 12 Lease Determination to the IBLA, which denied it as untimely. The IBLA also denied Mr. Mann's subsequent motion for reconsideration.

Mr. Mann thereafter filed suit in the Court of Federal Claims alleging that the United States breached his geothermal lease and violated his Fifth Amendment due process rights by failing to conform to the regulations regarding proper notice incorporated into his lease prior to terminating the lease. The government moved to dismiss or, in the alternative, for summary judgment. Mr. Mann cross-moved for summary judgment.

The Court of Federal Claims rejected Mr. Mann's argument that actual receipt of the Lease Determination was required to effect proper notice. Rather, the court determined that the Geothermal Steam Act regulations incorporated into Mr. Mann's lease allowed for constructive receipt of BLM communications, which is satisfied when a decision is sent to a lessee's last address of record, even though delivery of the decision is unsuccessful. The court further determined that the un-signed copy of the April 1 letter Mr. Mann forwarded to the BLM was a "clear and deliberate notice of a change of [his] address," thereby making the Costa Mesa address his last address of record. Therefore, the court concluded that because the Lease Determination was mailed to his last address of record, he is deemed to have received it. The court also determined that one of Mr. Mann's due process claims lacked merit and dismissed the other for lack of subject matter jurisdiction. Thus, it granted the government's motion to dismiss or, in the alternative, for summary judgment, and denied Mr. Mann's motion for partial summary judgment.

Mr. Mann filed a timely appeal and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the trial court's grant of summary judgment *de novo*, with all justifiable factual inferences being drawn in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. Cl. R. 56(c).

On appeal, Mr. Mann argues that the regulations incorporated into his lease require actual receipt of the Lease Determination before the BLM can terminate his lease. Thus, Mr. Mann alleges that the BLM breached his lease because he did not actually receive the decision. Alternatively, Mr. Mann contends that he did not receive constructive notice because the Lease Determination was not sent to his last address of record and the remaining requirements for constructive receipt were

not satisfied.[2] The government counters that the lease agreement, and incorporated regulations, authorized constructive notice of the Lease Determination and did not require actual receipt. According to the government, Mr. Mann received constructive notice because the Lease Determination was properly sent by certified mail to his last address of record and it was "undeliverable" in a manner constituting constructive receipt. Specifically, the government maintains that the unsigned copy of the April 1 letter Mr. Mann forwarded to the BLM constitutes a request by him for the BLM to change his mailing address to the Costa Mesa address with respect to all future correspondence.

It is undisputed that the BLM was required to provide Mr. Mann with notice of its pending lease termination decision before it terminated his lease. We agree with the Court of Federal Claims that under the regulations incorporated into Mr. Mann's lease agreement, providing constructive notice satisfies this requirement. The regulation relied upon by the government as authority for permitting constructive notice is 43 C.F.R. § 1810.2, which provides that a "person will be deemed to have received the communication if it was delivered to his last address of record in the appropriate office of the [BLM], regardless of whether it was in fact received by him."

Having concluded that providing constructive notice satisfies the notice requirement, we must next determine whether the BLM satisfied its obligation to send the Lease Determination to Mr. Mann's last address of record by mailing it to the Costa Mesa address noted in the unsigned copy of the April 1 letter Mr. Mann forwarded to the BLM. As the Court of Federal Claims recognized, the regulations incorporated into Mr. Mann's lease do not define the phrase "the last address of record," nor do they establish a procedure by which a leaseholder must notify BLM of a change of address. *See L. Lee Horschman*, 74 I.B.L.A. 360, 363 n. 1 (1983). Under IBLA precedent, however, a lessee's "last address of record" is the place where the party to receive documents has declared he will receive such delivery. *Arthur M. Solender*, 79 I.B.L.A. 70, 73 (1984). Generally, it is the address that is on the lease application or lease assignment, unless the lessee or his duly authorized agent has "expressly indicated an intention to change [his] address of record." *Id.* (holding that changing a record address based solely upon receipt of a royalty payment check bearing a different address than the one on file was inappropriate); *Victor M. Onet, Jr.*, 81 I.B.L.A. 144, 146 n. 1 (1984).

■ The record indicates that before the BLM received a copy of the April 1, 1991, letter from Crowne to the insurance company, the "last address of record" the BLM had for Mr. Mann was his Malibu address. We reject the government's argument that based on the parties' performance under the lease agreement, the BLM correctly understood the unsigned copy of the April 1, 1991 letter it received as a request by Mr. Mann to change his mailing address on record with the BLM

2. Mr. Mann also asserts that the BLM terminated his lease without issuing an appropriate decision and that the BLM breached his lease by failing to provide notice and an opportunity for a hearing in accordance with the Due Process Clause of the Fifth Amendment. In response, the government argues that the BLM properly terminated the lease after providing Mr. Mann with constructive receipt of the Lease Determination. The government further contends that the Court of Federal Claims did not possess jurisdiction to consider Mr. Mann's due process claims, and alternatively, that the BLM's termination of Mr. Mann's lease did not violate his due process rights.

to the Costa Mesa address. The copy of the April 1 letter sent to the BLM was written on Crowne's letterhead, it was addressed to the insurance company, the signature line stated that it was from Mr. Mann as president of Crowne, and it was unsigned. Even accepting the government's position that the identities of Mr. Mann and Crowne were fused based on Mr. Mann's prior communications, a lessee may choose to use different mailing addresses to correspond with different entities. Thus, that Mr. Mann forwarded an unsigned copy of the April 1 letter, which requested the insurance company to change his mailing address, to the BLM for an unrelated purpose does not expressly indicate an intention to change his mailing address on record with the BLM from the Malibu address to the Costa Mesa address. We therefore conclude that the BLM did not mail the Lease Determination to Mr. Mann's last address of record. *See Solender,* 79 I.B.L.A. at 73.

Because the BLM did not provide Mr. Mann with constructive notice of the lease's pending termination, it breached the terms of Mr. Mann's lease agreement. *See id.* at 72–73 (stating that unless the requirements in § 1810.2(b) are "strictly complied with, including mailing the document to the last address of record, a presumption of receipt of a document cannot arise under the regulation").

## CONCLUSION

Accordingly, we reverse the judgment of the Court of the Federal Claims. We remand the appeal for entry of a proper judgment in accordance with this opinion, including a determination of an appropriate remedy.

*REVERSED AND REMANDED.*